UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GREGORY C. JOHNSON, | ) Case No. 1:18CV1140 |
| Plaintiff, | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) MEMORANDUM AND ORDER |

Plaintiff Gregory C. Johnson ("Johnson" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the Commissioner's final decision is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is reversed and remanded.

I. PROCEDURAL HISTORY

On September 14, 2012, Johnson filed applications for a period of disability and DIB, and for SSI benefits, both applications alleging disability, with an amended date beginning February 2, 2011. (R. 8, Transcript ("tr."), at 12, 188-196, 197-200, 219-230, 628.) Johnson's applications were denied initially and upon reconsideration. (R. 8, tr., at 12, 62-63, 64-80, 81-97,

98-111, 112-125, 126-127.) Thereafter, Johnson filed a request for a hearing before an administrative law judge ("ALJ"). (R. 8, tr., at 151.)

The ALJ held the hearing on March 10, 2015. (R. 8, tr., at 30-61.) Johnson appeared at the hearing, was represented by counsel, and testified. (*Id.* at 32-33, 34-56.) A vocational expert ("VE") attended the hearing via telephone and provided testimony. (*Id.* at 33, 57-60.) On April 28, 2015, the ALJ issued a decision, applying the standard five-step sequential analysis to determine whether Johnson was disabled. (R. 8, tr., at 12-24; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).) The ALJ concluded Johnson was not disabled. *Id.* at 23-24.

The Appeals Council denied Johnson's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (R. 8, tr., at 1-4.) Johnson sought judicial review of the Commissioner's final decision. *Id.* at 747-748. On December 5, 2016, the parties jointly agreed to a remand of this case for a new decision. *Id.* at 761-763. The Appeals Council remanded the case to the ALJ on January 27, 2017, providing detailed guidance as to the issues to be addressed on remand. *Id.* at 766-769. The remand also provided that subsequent claims filed by Johnson for DIB and SSI on October 17, 2016, were consolidated with his original claims for adjudication. *Id.* at 769, 829, 834.

The ALJ, on remand, held a hearing on July 11, 2017. (R. 8, tr., at 651-677.) Johnson appeared at the hearing, was represented by counsel, and testified. (R. 8, tr., at 653, 655-669.) A vocational expert attended the hearing and testified. (R. 8, tr., at 654, 669-676.). On October 17, 2017, the ALJ issued a revised decision, applying the standard five-step sequential analysis to determine whether Johnson was disabled. (R. 8, tr., at 627-642; *see generally* 20 C.F.R. §§ 404.1520(a), 416.920(a).) Based on her review, the ALJ concluded Johnson was not disabled.

2

(R. 8, tr., at 642.) The Appeals Council denied Johnson's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 8, tr., at 612-615.)

Johnson seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

Johnson presents the following legal issues, verbatim, for the court's review:

1. Whether the ALJ committed reversible error when she failed to consider Mr. Johnson's schizophrenia under Listing 12.03.

2. Whether the ALJ failed to properly evaluate and weigh the opinions of Mr. Johnson's treating psychiatrist.

3. Whether the ALJ's assignment of great weight to the opinions of Social Security's non examining consultants is reversible error.

(R. 12, PageID #: 1215.)

## II. PERSONAL BACKGROUND INFORMATION

Johnson was born in 1964, and was 47 years old on the alleged disability onset date. (R. 8, tr., at 190, 219.) He has at least a high school education and is able to communicate in English. (R. 8, tr., at 222, 224.) Johnson has past work as a kitchen helper and a cleaner. (R. 8, tr., at 655.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Johnson's brief alleging error by the ALJ. As stated above, Johnson filed applications for a period of disability and DIB and for SSI benefits on September 14, 2012. (R. 8, tr., at 12, 188-196, 197-200.) In his application, Johnson

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

listed his physical or mental conditions that limit his ability to work as: "mental condition; high blood pressure." *Id.* at 223. Because Johnson's arguments focus on alleged errors pertaining to his mental condition, the court will focus on that evidence.

Michelle E. Romero, D.O., conducted an initial psychiatric evaluation at Northeast Ohio Neighborhood Health Services ("NEON") on September 18, 2012. (R. 8., tr., at 360-364.) Johnson reported depression and auditory hallucinations that worsened over the previous two years, alcohol abuse, confusion and forgetfulness, and sleep problems. *Id.* at 360. The doctor noted signs of psychosis (although no signs of mania), appetite and sleep problems, delayed speech, flat affect, anxious mood, and erratic and inconsistent memory. *Id.* at 362. Dr. Romero assessed Johnson with average intellect, a cooperative attitude, but noted he was distracted and his reasoning, judgment and insight were assessed as poor. *Id.* The doctor diagnosed claimant with schizophrenic disorder, depressive disorder NOS, and alcohol dependence. *Id.* The treatment plan included medication for psychosis, plus referral for ongoing mental health care and alcohol dependence. *Id.* at 362-363.

On July 26, 2013, J. Joseph Konieczny, Ph.D., conducted a psychological evaluation of Johnson. (R. 8, tr., at 384-388.) Dr. Konieczny based his evaluation on the clinical interview and two months of treatment notes from NEON. *Id.* at 384. Johnson reported that he had a sporadic work history due to high blood pressure and schizophrenia. *Id.* at 385. He stated that he had been involved in outpatient counseling at NEON since 2012. *Id.* Dr. Konieczny noted that Johnson's effort during portions of the mental status examination "appeared to be quite suspect." *Id.* at 385. Johnson indicated that a ball was square in shape, and that Thursday was the day following Tuesday. *Id.* Dr. Konieczny stated that: "His level of motivation and

4

participation throughout the evaluation again seemed suspect, particularly during portions of the mental status examination." *Id.* For example, the psychologist noted that Johnson spoke reasonably well, with no tangentiality or poverty of speech, and that his level of speech "appeared to be significantly greater than would be expected given his presentation during the mental status examination." *Id.* at 386.

The psychologist noted that Johnson reported a past history of paranoia, but indicated no such thoughts during the previous four or five months. (R. 8, tr., at 386.) He also reported a history of auditory hallucinations, hearing voices call his name, but stated that these incidents had diminished since he began psychotropic medication the previous month. *Id.* In the psychologist's evaluation of claimant's cognitive functioning, Dr. Konieczny noted Johnson's ability to concentrate and attend to tasks showed indications of moderate impairment. *Id.* Dr. Konieczny stated: "Again, his effort during this portion of the evaluation seemed quite suspect." *Id.* Johnson indicated that there are six days in a week, and he could not count to ten. *Id.*

Dr. Konieczny assessed Johnson with Psychotic Disorder, NOS, with a history of mild hallucinations and paranoia. (R. 8, tr., at 387, 388.) Although no formal psychometric assessment was conducted, the psychologist stated that Johnson showed marked deficits in his general fund of information, leading to a diagnosis of Borderline Intellectual Functioning. *Id.* at 387, 388. At the same time, the psychologist noted "it would appear he exhibited a poor effort" during the evaluation. *Id.* at 387. Dr. Konieczny assessed that claimant would have limitations in his ability to understand, remember and carry out instructions, and would have difficulty in maintaining focus and persistence on moderate to complex multi-step tasks. *Id.* He would have significantly diminished tolerance for frustration and diminished coping skills, which would

5

impact his ability to respond to simple supervision and interpersonal relations in a work setting, as well as to cope with simple work pressures. *Id.*

State agency reviewing psychologist, Tonnie Hoyle, Psy.D., determined on August 2, 2013, that there was insufficient evidence to substantiate the presence of a disorder under Listing 12.06 (Anxiety-Related Disorders); and that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.09 (Substance Addiction Disorders), for the period July 2008 through May 2012. (R. 8, tr., at 72, 89 (psychiatric review technique, "PRT").) Under the "B" criteria for Listing 12.09, Dr. Hoyle had insufficient evidence to determine any restriction of activities of daily living, difficulties in maintaining social functioning, or difficulties in maintaining concentration, persistence or pace. *Id.*

Dr. Hoyle determined that between June 1, 2012, and August 2, 2013, a medically determinable impairment was present that did not precisely satisfy the diagnostic criteria for either Listing 12.02 (Organic Mental Disorders) or Listing 12.05 (Mental Retardation). (R. 8, tr., at 72, 90 (PRT).) Under the "B" criteria for Listings 12.02 and 12.05, Dr. Hoyle found marked difficulties in maintaining social functioning, and moderate restriction of activities of daily living, as well as moderate difficulties in maintaining concentration, persistence or pace. *Id.*

Dr. Hoyle completed a mental residual functional capacity assessment for the period June 2012 to the present on August 2, 2013. (R. 8, tr., at 74-77, 91-94.) Dr. Hoyle found that Johnson had understanding or memory limitations, specifically, that he was moderately limited in his ability to understand and remember detailed instructions, although he was capable of performing simple 1-2 step tasks. *Id.* at 75. The claimant was moderately limited in his ability to carry out detailed instructions, in his ability to maintain attention and concentration for extended periods,

in his ability to sustain an ordinary routine with special supervision, in his ability to work in coordination with, or in proximity to, others without being distracted by them, and in the ability to make simple work-related decisions. *Id.* at 75. The psychologist also assessed that claimant was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* at 75-76. She noted that Johnson is capable of performing tasks in an environment where he is not required to meet strict production goal demands. *Id.* at 76.

Dr. Hoyle also found that Johnson was markedly limited in his ability to interact appropriately with the general public, and moderately limited in his ability to: ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 8, tr., at 76.) The psychologist indicated that Johnson should not have any interaction with the general public, and interactions with coworkers and supervisors should be occasional and superficial. *Id.* Dr. Hoyle also found that Johnson was moderately limited in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *Id.*

On reconsideration, state agency reviewing psychologist, Karen Steiger, Ph.D., adopted Dr. Hoyle's psychiatric review technique findings on September 18, 2013. (R. 8, tr., at 103-105, 117-119.) Dr. Steiger's mental RFC assessment was also identical with Dr. Hoyle's assessment. *Id.* at 106-109, 120-123.

7

Elaine Campbell, M.D., completed a form entitled "Medical Source Statement: Patient's Mental Capacity" on October 10, 2013, in connection with her first meeting with claimant. (R. 8, tr., at 437-438.) Dr. Campbell checked boxes indicating that Johnson could rarely: maintain attention and concentration for extended periods, respond appropriately to changes in routine settings, function independently, deal with work stress, complete a normal workday without interruption from his psychologically based symptoms, and make a number of listed occupational adjustments. *Id.* at 437. Dr. Campbell also indicated that claimant was unable to understand, remember and carry out complex, detailed, or simple job instructions. *Id.* at 438. The doctor also found that Johnson could rarely socialize, behave in an emotionally stable manner, relate predictably in social situations, or leave home on his own. *Id.* Dr. Campbell wrote that she was able to make this assessment on their first meeting (that date) based on reviewing claimant's complete medical history. *Id.*

Dr. Campbell completed an updated "Medical Source Statement: Patient's Mental Capacity" form on July 19, 2014. (R. 8, tr., at 556-557.) With a few changes, her assessment otherwise was identical to her October 2013 statement. In the section concerning occupational adjustments, the doctor indicated that Johnson occasionally could respond appropriately to changes in routine settings. *Id.* In addition, claimant could occasionally: understand, remember and carry out simple job instructions; behave in an emotionally stable manner; and leave home on his own. *Id.* at 557.

Johnson saw neurologist Kuruvilla John, M.D., at the Cleveland Clinic on October 4, 2016, for evaluation of memory loss.[2] (R. 8, tr., at 1063-1065.) Johnson appeared at the evaluation with his live-in caregiver, Linda Taylor, who provided a history to the doctor. *Id.* at 1063 (noting the claimant "is not able to give a detailed history. In fact, he speaks very little."). Taylor reported to Dr. John that claimant has schizophrenia and anxiety, as well as a history of hypertension and hyperlipidemia. *Id.* On physical examination, the neurologist was unable to test claimant's memory "since he says he cannot remember anything." *Id.* The neurological examination was "relatively benign," finding mild ataxia as well as memory loss. *Id.* at 1064. Dr. John stated that, "I suspect that his underlying schizophrenia is the major reason for his cognitive dysfunction." *Id.*

Barbara Wiseley-Cortland, MSN, APRN, completed a "Medical Source Statement: Mental Capacity" form on May 1, 2017. (R. 8, tr., at 1136-1137.) Ms. Wiseley-Cortland assessed Johnson with extreme limitations (i.e., an inability to function) in almost every area on the form: understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and, adapting or managing himself. *Id.* She indicated that he had lesser, "marked," limitations in the ability to: follow one or two-step oral instructions to carry out a task; ask and answer questions and provide explanations; cooperate with others; respond to demands; and, maintain personal hygiene and attire appropriate to a work

---

[2] The ALJ inverts Dr. John's name in the decision. *See* R. 8, tr., at 638. The record is clear that the doctor's name is Kuruvilla John, M.D., as reference to Cleveland Clinic's website confirms. *See, e.g., id.* at 1062 ("Message was forwarded to Dr. John"); 1064 ("DICTATED BY: Kuruvilla John, MD"); https://my.clevelandclinic.org /staff/18435-kuruvilla-john.

setting. *Id.* The diagnoses that support her assessment of limitations were schizophrenic disorder, bipolar type, and unspecified anxiety disorder. *Id.* at 1137.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her October 17, 2017, decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since February 2, 2011, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments as of June 1, 2012: affective disorder, schizophrenia, and alcohol/substance addiction disorder (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant has retained the capacity to understand and remember directions for simple tasks. He has the capacity to perform these simple tasks in an environment without the requirement to meet strict production goal demands. He has the capacity to work where interactions with co-workers and supervisors are occasional and superficial and there are no interactions with the general public. He has retained the capacity to work where changes are infrequent and thoroughly explained.
>
> 6. The claimant is capable of performing past relevant work as a kitchen helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2011, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 8, tr., at 630, 632, 634, 641.)

## V. DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

VII. ANALYSIS

Johnson presents three legal issues for the court's review, asserting the ALJ erred: 1) by not considering his schizophrenia under Listing 12.03, 2) when evaluating and weighing the opinions from his treating psychiatrist, and 3) by assigning great weight to the opinions from non-examining consultants. (*See, e.g.*, R. 12, PageID #: 1215.)

## Listing 12.03

Johnson contends that the ALJ committed reversible error by failing to consider his schizophrenia under Listing 12.03. (R. 12, PageID #: 1227-1230.) He asserts that a review of the decision reveals that the ALJ failed to perform any meaningful evaluation of his schizophrenia under the Listings. *Id.* at 1227.

In the Third Step of the five-step analysis, the claimant has the burden to show that his or her impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Wilson*, 378 F.3d at 548. A claimant who meets the requirements of an impairment in the listings will be found conclusively disabled and entitled to benefits. *Reynolds v. Commissioner*, No. 09-2060, 2011 WL 1228165, at *2 (6th Cir. Apr. 1, 2011); *see also Bowman v. Commissioner*, 683 Fed. Appx 367, 372 (6th Cir. 2017). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Gearhart v. Commissioner*, No. 5:12CV2105, 2013 WL 4430896, at *6 (N.D. Ohio Aug. 15, 2013). In addition, "a claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting medical findings equal in severity to all the criteria for the one most similar listed

impairment." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

For a claimant's impairment or combination of impairments to meet or medically equal Listing 12.03, specific criteria must be met:

> Listing 12.03 Schizophrenia spectrum and other psychotic disorders (*see* 12.00B2), satisfied by A and B, or A and C:
>
> A. Medical documentation of one or more of the following:
>
> 1. Delusions or hallucinations; or
> 2. Disorganized thinking (speech); or
> 3. Grossly disorganized behavior or catatonia.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (*see* 12.00F):
>
> 1. Understand, remember, or apply information (*see* 12.00E1).
> 2. Interact with others (*see* 12.00E2).
> 3. Concentrate, persist, or maintain pace (*see* 12.00E3).
> 4. Adapt or manage oneself (*see* 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least two years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or highly structured setting(s) that is ongoing and diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

20 C.F.R. Part 404, Subpart P, Appendix 1 (2017).

The ALJ here determined at Step Two, without elaboration, that schizophrenia was among Johnson's severe impairments. (R. 8, tr., at 630; *see also id.*, at 15.) At Step Three, however, the ALJ considered only whether Johnson met or equaled Listings 12.05 (Intellectual disorder) or 12.06 (Anxiety and obsessive-compulsive disorders). *Id.* at 632-634. There is no discussion or analysis of whether Johnson met Listing 12.03 (Schizophrenia). *Id.* Although the ALJ considered the "paragraph B" criteria for Listing 12.06, which are identical to the "paragraph B" criteria for Listing 12.03 (R. 8, tr., at 632-633), the ALJ did not either explicitly or implicitly consider the criteria for Listing 12.03A or Listing 12.03C. Importantly, Listing 12.03 can be satisfied by meeting 12.03A and 12.03C. 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017). Defendant concedes that Johnson could arguably satisfy Listing 12.03A. (R. 13, PageID #: 1244.)

Johnson contends that, because the ALJ recognized schizophrenia as a severe impairment, the ALJ erred by not conducting a meaningful analysis of Listing 12.03. (R. 12, PageID #: 1229.) During the hearing closing argument, counsel drew the ALJ's attention to Listing 12.03, arguing that claimant's extreme limitations prevent him from performing competitive work. (R. 8, tr., at 676.) Johnson points to evidence of record that would support a more thorough consideration of the schizophrenia listing. (R. 12, PageID #: 1229-1230 (*see, e.g.*, R. 8, tr., at 341 (diagnosis of schizophrenia; auditory hallucinations); 360, 362 (schizophrenia; auditory hallucinations); 386 (auditory hallucinations).)

The ALJ has a duty to "articulate with specificity reasons for the findings and conclusions that he or she makes," and the ALJ here failed to determine or even consider whether claimant's impairments meet or equaled Listing 12.03. *See, e.g., Bailey v.*

*Commissioner*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. 1999) (TABLE, text in WESTLAW). The ALJ failed to discuss the evidence relevant to Listing 12.03, and whether or not such evidence satisfied the elements of the Listing. *See, e.g.*, *Miller v. Commissioner*, 181 F. Supp.2d 816, 820 (S.D. Ohio 2001). Remand is appropriate where there is a "failure to conduct a meaningful Step Three analysis which evaluates the medical evidence, compares it to the applicable listing, and provides an 'explained conclusion' as to why the claimant's impairments fail to meet or equal a listed impairment." *Popp v. Commissioner*, No. 1:13CV01338, 2014 WL 1513844, at *5 (N.D. Ohio Apr. 16, 2014) (citing cases). The evidence of record raises a substantial question regarding whether claimant meets Listing 12.03, which renders remand appropriate. *Sheeks v. Commissioner*, 544 Fed. Appx 639, 641-642 (6th Cir. 2013); *McQuin v. Commissioner*, No. 3:12CV1704, 2014 WL 1369674, at *5 (N.D. Ohio Mar. 31, 2014).

The Commissioner contends that claimant could not satisfy the Listing, and that Johnson does not argue that he met Listing 12.03C. (R. 13, PageID #: 1244.) Listing 12.03C requires claimant's mental disorder to be "serious and persistent," lasting at least two years, with both ongoing medical treatment or mental health therapy and marginal adjustment. Johnson points to evidence that his disorder had lasted at least two years. (R. 12, PageID #: 1229-1230.) In addition, Johnson recites medical evidence demonstrating ongoing medical treatment or mental health therapy and marginal adjustment. *Id.* at 1220-1225.

In light of the ALJ's failure to analyze claimant's schizophrenia under Listing 12.03, the court is left to speculate whether the ALJ would have concluded that claimant's impairments do not meet or equal a listed impairment, had that listing been considered. Accordingly, the court finds a lack of substantial evidence to support the ALJ's conclusion that claimant's impairments

16

do not meet or equal a listed impairment.  The decision is reversed and remanded for clarification of this issue.  See *Sheeks*, 544 Fed. Appx at 641-642 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *Hoffman v. Commissioner*, No. 1:18CV2123, 2019 WL 3769597, at *7 (N.D. Ohio July 24, 2019), *adopted by*, 2019 WL 3766917 (N.D. Ohio Aug. 9, 2019).  The court, however, is careful to note that it expresses no opinion regarding whether plaintiff satisfies this Listing.

## B.  PLAINTIFF'S REMAINING ARGUMENTS

Johnson also contends that the ALJ failed to properly evaluate and weigh the opinions from his treating psychiatrist, Dr. Campbell.  (R. 12, PageID #: 1230-1234.)  He argues that the ALJ did not designate Dr. Campbell as a treating source, and erred by presuming that the doctor relied on claimant's own statements to formulate her opinions.  *Id.* at 1231.  He further contends that the ALJ's assignment of great weight to the opinions of Social Security's non-examining consultants is reversible error.  (R. 12, PageID #: 1235-1236.)  Because the court is remanding this action based on the Plaintiff's first assignment of error, the court declines to address these arguments in the interest of judicial economy.  While the court does not express an opinion regarding the merits of Plaintiff's remaining arguments and whether the underlying ALJ's decision was sufficient in such regards, given the need for remand, a new decision should be mindful of the arguments raised by the Plaintiff.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is not based on substantial evidence in the record.  The court finds a lack of substantial evidence to support the ALJ's implicit conclusion that claimant's impairments do not meet or equal Listing 12.03.

Accordingly, the Commissioner's final decision is reversed and remanded for further consideration consistent with this opinion.

<pre>
                                              s/ David A. Ruiz
                                              David A. Ruiz
Date:  September 16, 2019                     United States Magistrate Judge
</pre>